## King v. Commonwealth.

(Decided May 13, 1924.)

### Appeal from Lawrence Circuit Court.

1. **False Pretenses—Prima Facie Evidence of Intent to Defraud by Passing Check May be Rebutted by Facts and Circumstances.—** While Ky. Stats., section 1213a, makes uttering of check without funds to cover prima facie evidence of intent to defraud, such prima facie case may be rebutted by facts and circumstances.
2. **False Pretenses—No Offense where One Takes Check with Knowledge of Insufficient Funds.—**Where drawer of check informs payee before delivery that funds are not on hand to meet it and payee promises to hold it, no offense is committed under Ky. Stats., section 1213a.

C. B. WHEELER and CAIN & THOMPSON for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

P. J. King was convicted under the provisions of section 1213a, Kentucky Statutes, of the crime of uttering a "cold check." On this appeal he urges several grounds for reversal, among others that the court erred in not giving a peremptory instruction to find him not guilty.

In the summer of 1923, J. N. Holbrook was engaged in the business of selling automobiles in Lawrence county. A new Buick machine listed at $985.00 had been damaged in transit and he was offering it at a discount.

King seems to have lived in West Virginia, but at the time was operating a drilling rig in Lawrence county, and

making frequent trips back and forth to the well. He became interested in the machine and after some negotiations between the two, the price of $700.00 was agreed upon as being reasonable, and King told Holbrook that if he decided to take it he would call over the phone and that Holbrook could drive over for him to the field where he was at work. Later he did call and Holbrook drove the car over to that place and King returned with him, and a trade was consummated on the return trip. Two checks were given in payment, one for $200.00 and the other for $500.00, all of this transpiring while they were in the car. Holbrook undertook to collect the $200.00 check and it was dishonored but later paid. He held the $500.00 check for two or three months and when presented it was also dishonored.

Upon purchasing the machine King carried it to Huntington, W. Va., and placed it in a garage for repairs. After payment was refused on the $500.00 check Holbrook visited King in reference to it. King claimed that he had not used the machine and offered to return it in settlement of the $500.00 debt, but the garage had a bill against it for $161.00 and Holbrook was unwilling to assume payment of this. An agreement was reached by which the proprietor of the garage was to sell the machine, retain his bill and pay the overplus to Holbrook, but before this could be done it was attached for another of King's debts and sold under judgment. Later this prosecution was instituted.

Holbrook, in detailing the conversation that occurred at the time of the trade and the execution of the checks said:

"He says, 'I will make the check $200.00 and let it go in, and you hold this five hundred dollar check for me a few days.' I said, 'How long?' He says, 'Twenty or thirty days.' I says, 'I need the money mighty bad and I don't want to do it.' He says, 'I want to date this five hundred dollar check thirty days ahead.'

"Q. Mr. Holbrook, state whether or not you agreed for him to date that check thirty days ahead, or any other date ahead    A. Positively not. The check was dated on the date it was given to me— July 9th—the checks show it. So he asked me to hold this five hundred dollar check for him twenty or thirty days. In order to help him I just held the

check, and never presented it until—I don't know—some time two or three months after that."

On cross-examination he testifies:

"What was the purpose of giving you two checks for the seven hundred dollars, instead of one? A. I don't know any purpose at all. My intention was, I was to get all the money. He said, 'Let the two hundred dollar check go in.' He said he had other debts to meet—didn't know whether he could reach them all; and wanted me to hold it on him twenty or thirty days. . . .

"While sitting in the car, you agreed with him to accept the two hundred dollar check, which was to be paid at once, and to hold the five hundred dollar check which is in controversy in this case for twenty or thirty days. A. Yes.

"Q. Then after that agreement you turned the car over to him and he took it on? How is that? A. Yes, sir; yes, sir.

"Q. When you turned that car over to him, you didn't do it upon the belief that the five hundred dollar check, which is in controversy here, would be paid immediately? A. No, not within twenty or thirty days.

. . . .

"At the time you made the transaction with him there, was there anything said by you and him to the effect that if he didn't have the money in thirty days, that you agreed to hold it—that you will still hold it longer, and give him more time in this way? A. He said, 'Right at the date, if it isn't there will you give me a little longer?' I says, 'I will give you as much as two or three days of grace, wouldn't give you any longer than that, I need the money now.'

"Q. That is, if it wasn't there—if the money wasn't there at the end of the thirty days you would give him two or three days longer? A. Yes, sir."

Section 1213a, Kentucky Statutes, provides:

"That any person who with the intent to defraud shall make, or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in such

bank or other depository for the payment of such check, draft or order in full upon its presentation; or,

"Who after having made, uttered or delivered any check, draft or other order for the payment of money upon any bank, or other depository shall withdraw or cause to be withdrawn, the money or any part thereof to the credit of the maker of such draft, check or other order for the payment of money without leaving with such bank or other depository a sufficient sum to cover such check, draft or other order for the payment of money, shall be guilty. . . .

"The making, drawing, uttering or delivering of such check, draft or order as aforesaid shall be *prima facie* evidence of intent to defraud."

While the statute makes the uttering or delivering of an instrument such as this in the manner therein set out, *prima facie* evidence of the intent to defraud, this is *prima facie* only and may be rebutted by the facts and circumstances of the case.

In Com. v. Hammock, 198 Ky. 785, Hammock gave a check in payment of a pre-existing debt. It was dishonored. The lower court sustained a demurrer to the indictment. In certifying the law of the case this court said:

"The crime is not committed unless the issuing of the check, draft or order was with the intent to defraud. If it were not issued with intent to defraud, and its issual could not have been, under the facts, a fraud, no violation of the statute results."

In Grissom v. Com., 181 Ky. 189, Grissom testified that he told the prosecuting witness at the time he gave him the check that he did not have any money in the bank, but that he would sell some property and place the proceeds in the bank to pay the check and that the latter loaned him the money with that understanding.

While not set out in the opinion, the record in that case discloses that the lower court authorized the jury to find the defendant not guilty, if they believed that defense.

This court made the following reference to the instructions:

"The instructions are complained of, but we find no objection to them; they stated in apt terms the

case for the Commonwealth as well as the defense relied on by Grissom.''

If such an instruction is proper where the facts are disputed, a peremptory instruction should have been given for defendant under similar undisputed facts.

The statute is based on the principle that the drawing or uttering of a check is an implied representation that the drawer has present funds on deposit to meet it. By its provisions, if such funds are not on hand and this is done with the intent to defraud, a crime is committed, and the act of drawing or uttering is made *prima facie* evidence of such intent.

If the person exchanging money or property therefor is informed before he makes such exchange that such funds are not on hand to meet the check and accepts it under a promise to hold it to enable the maker to procure funds to meet it, this is but the creation of a debt, and the drawing or uttering of a check in evidence thereof is not to be distinguished from the execution of a promissory note.

Before accepting the check Holbrook was informed that King did not have funds in the bank with which to pay the $500.00 check. In this respect he was not deceived or defrauded. Indeed he agreed that ''if the money wasn't there at the end of thirty days he would give King two or three days longer.''

No doubt he accepted the check upon the faith and expectation that it would be paid at the time agreed upon, but that character of transaction is not covered by the statute.

In view of this conclusion it becomes unnecessary to consider the other questions raised.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.