## Hughes v. Commonwealth.

(Decided December 20, 1929.)

S. JEWELL RICE for appellant.

J. W. CAMMACK, Attorney General (DOUGLAS C. VEST, of counsel), for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

Section 1213a of the 1922 edition of Carroll's Kentucky Statutes is what is commonly known as our "Cold Check" statute. In substance it provides that any person who issues a check on a bank, payable to another, with intent to defraud such other, and who knows at the time of doing so that he has no funds or not sufficient thereof to pay the check in full, or who with like intent, after issuing the check while sufficient funds are in the bank upon which it was drawn, withdraws them or a portion thereof so as to reduce the deposit below the amount of the check and not leaving a sufficiency to meet it, shall be guilty of a felony if the check is for $20 or more, and upon conviction shall be confined in the penitentiary not less than one nor more than two years. The venue of the prosecution is expressly fixed therein by these words contained in it "and the drawer of such check or draft shall be prosecuted in the county in which he delivers same."

By chapter 62 of the Session Acts of 1926 that section was repealed and amended in many essential and material respects and so as to punish the one issuing the check regardless of any intent on his part to defraud, and without any knowledge on his part of insufficient funds in the bank on which it was drawn to meet it, and it also made it an offense to issue a dishonored postdated check, and in many other vital particulars the amended section was altered and changed. By chapter 41 of the Acts of

1928 the section as amended by the 1926 act was again amended in some minor particulars. In the case of Burnam v. Commonwealth, 228 Ky. 410, 15 S. W. (2d) 256, we held the 1928 act unconstitutional for the reasons stated in that opinion and which will not be repeated here, and in the opinion we also said that prior valid acts upon the subject were not repealed by the unconstitutional amenment. That opinion did not expressly refer to or deal with the 1926 amenment; but in the case of Ward v. Commonwealth, 228 Ky. 468, 15 S. W. (2d) 276, 277, we expressly held that the 1926 amendment was also unconstitutional for the reasons assigned in the Burnam opinion, and in the Ward opinion we held that section 1213a, supra, was not repealed, but that, on the contrary, it "is still in effect," upon the ground that the two amending acts referred to being unconstitutional and void did not have the effect to repeal it.

On February 15, 1928, after the enactment of the unconstitutional amendment of 1926, the grand jury of Scott county returned this indictment against appellant and defendant below, C. W. Hughes, accusing him of the offense of issuing a cold check to J. E. Ingram on the Commercial Bank & Trust Company of Lexington, Ky., for the sum of $111.91, and which was done on February 27, 1927, after the taking effect of the invalid 1926 amendment. Defendant was tried thereon in the Scott circuit court on May 13, 1928, and was convicted and punished by confinement in the penitentiary for one year. His motion for a new trial was overruled, and from that order and the judgment pronounced on the verdict he prosecutes this appeal, urging a number of alleged reversible errors, many of which it will not be necessary to discuss or determine. The indictment charged that the offense was committed in Scott county, and its language was such as to make it a good one under section 1213a, supra, as it existed before the enactment of either of the amendments referred to, in that all of the elements necessary to create the offense as contained in that section were averred in it.

There was but little contrariety in the evidence introduced at the trial, and which, in substance, was: That Ingram was a farmer residing in Scott county and had some hay for sale. Defendant was engaged in the operation of a feed store in Lexington, Ky., and as a result of negotiations between the parties he purchased Ingram's hay at $15.50 per ton. Subsequent to that

agreement defendant procured and removed the hay from where Ingram kept it in Scott county to defendant's store in Lexington. Several days thereafter Ingram went to Lexington and requested of defendant payment for the hay, which amounted to $111.91; whereupon defendant issued and delivered to him the check upon which the indictment was procured. The day on which it was done was Thursday and, according to Ingram, defendant requested that the check be not presented until the following Monday, but that he did not then expressly state that there were insufficient funds in the bank to meet it; while defendant stated, that he requested Ingram at that time to not deposit the check for a few days, and "I told him that I would have it within a few days and he told me he would or rather that he had made arrangements with the bank for thirty days (for some money to pay. some laborers) and he took the check." Ingram did not present the check to the bank for payment until the following Wednesday, when it was dishonored. He made repeated trips to the bank with the same result and never collected it until the day before the trial of the indictment. Whether the facts, as so substantially outlined, constituted a violation of section 1213a, supra, in view of the principles announced by us in the cases of Commonwealth v. Hancock, 198 Ky. 785, 250 S. W. 85, and King v. Commonwealth, 203 Ky. 163, 261 S. W. 1096, we need not now determine, since we have concluded the judgment must be reversed for the reasons hereinafter stated.

Cold check statutes in their essential features belong to the family of criminal "false pretenses," and are treated by the text-writers and law encyclopedias under the heading of "False Pretenses" as a species of that offense, though different in some essential particulars. The venue of prosecutions for obtaining money or property by "false pretenses," in the absence of a statutory provision to the contrary, is in the jurisdiction where the property was obtained, and not where the pretenses were made, 16 C. J. 130, sec. 273; and which we so held in the case of Commonwealth v. Van Tuyl, 1 Metc. 1, 71 Am. Dec. 455. So that, if the venue of prosecutions for issuing cold checks as denounced by section 1213a, supra, of our statutes, shall be governed by that principle, the circuit court of Scott county had jurisdiction of this prosecution, since defendant obtained the property of Ingram, the payee in the check, in Scott

county. However, one of the essential differences between the crime of obtaining property by false pretenses, and the issuing of a cold check, is that the issuing and delivering of the check under the circumstances to make it criminal is the gravamen of the latter offense, and it would therefore seem to follow that the offense was committed where the check was delivered. Independently, however, of that reasoning, we have seen that section 1213a, supra, fixes the venue at the place and with the jurisdiction where the check is *delivered*. In this case, as we have seen, it was delivered in Fayette county, and under the very terms of the statute the circuit court of that county had the exclusive venue to prosecute defendant therefor, and as a necessary corollary the Scott circuit court did not possess venue thereof.

However, the learned circuit judge who presided at the trial was induced to hold to the contrary under the express terms of the 1926 unconstitutional amendment, supra, which prescribed, inter alia, "the place of delivery shall be construed to mean the place of business of the person or firm in whose favor said check or draft is drawn," if a resident of this state, and other provisions as to venue applied if such payee was a nonresident. Ingram, the payee in the check involved in this prosecution, lived, and had his place of business, in Scott county. At the time of the trial our opinions, supra, in the Burnam and Ward cases, had not been delivered, and the trial court, proceeding under the unconstitutional 1926 act, took jurisdiction of the offense under its venue clause as contained in the last excerpt above. But, since that amendment has been annulled by our opinions referred to, and which reinstated section 1213a as it existed prior to either of those amendments, it necessarily follows that the court erred in assuming jurisdiction of this prosecution for the reasons here pointed out.

There was neither a special nor general demurrer to the indictment, but if there had been it could not avail the defendant, since the indictment on its face showed that the offense was committed in Scott county and the contrary was not developed until after the evidence was heard. The proper procedure then was to move for a peremptory instruction, which was done, but which the court overruled, and which, for the reasons stated, was error in the light of our subsequent opinions in the Burnam and Ward cases.

Wherefore, the judgment is reversed, with directions to grant the new trial and to dismiss the indictment without prejudice to another prosecution in Fayette county.